UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| AXIS DYNAMICS, INC., *et al.*, | ) |
| *Plaintiffs*, | ) Case No. 3:24-cv-329 |
| v. | ) Judge Atchley |
| KNOX COUNTY, TENNESSEE, *et al.*, | ) Magistrate Judge McCook |
| *Defendants*. | ) |

# MEMORANDUM OPINION AND ORDER[1]

Before the Court are Defendant Knox County's Motion to Dismiss [Doc. 35], Plaintiffs Axis Dynamics, Inc., and Wendy Rose's Motion to Disqualify Counsel [Doc. 39], Defendant Issac W. Westling's Motion to Dismiss [Doc. 54], and Defendant A. Reece Brassler's Motion to Dismiss [Doc. 73]. For the following reasons, the motions to dismiss [Docs. 35, 54, 73] are **GRANTED** and Plaintiffs' Motion to Disqualify Counsel [Doc. 39] is **DENIED**.

## I. BACKGROUND

This case started as a contract dispute but has since grown into a wide-ranging claim of conspiracy. On September 14, 2018, Christopher and Sonja Hawk entered into a construction agreement with Plaintiff Axis Dynamics Inc. to build a home in Knox County, Tennessee. [Doc. 29 at ¶ 15]. This construction agreement contained an arbitration provision requiring Axis and the Hawks to resolve most disputes between them through binding arbitration pursuant to the rules

---

[1] As an initial note, Plaintiffs' Response to Defendant Westling's Motion to Dismiss requests that the Court reconsider its rulings on Plaintiffs' Motion to Amend [Doc. 52] and their Motion to Expedite Discovery [Doc. 25]. [Doc. 69 at 14]. A party cannot seek affirmative relief through a responsive filing. FED. R. CIV. P. 7(b) ("A request for a court order must be made by motion."); *see also Walsh v. Indep. Home Care of Mich., LLC*, No. 20-10170, 2021 U.S. Dist. LEXIS 134709, *7 (E.D. Mich. July 20, 2021). Accordingly, the Court has not considered Plaintiffs' requests for reconsideration as they are not properly before the Court.

and procedures of the American Arbitration Association ("AAA").[2] [*Id.* at ¶ 19]. At first, things went smoothly. The Hawks obtained a construction loan from Defendant First US Bank, and Axis began building the Hawks' home. [*Id.* at ¶¶ 22, 26]. By September 2019, however, the Hawks allegedly owed Axis more than $100,000 for materials and labor. [*Id.* at ¶ 27]. To recover these costs, Axis sent the Hawks and First US Bank a demand letter. [*Id.* at ¶ 28]. When Axis heard nothing back, it filed a mechanic's lien with the Knox County Register of Deeds Office. [*Id.*].

Thereafter, Axis filed an *in rem* case in Tennessee state court to both enforce its lien and obtain a declaration that its rights in the Hawks' property were superior to that of First US Bank. [*Id.* at ¶ 29]. This *in rem* case was assigned to former defendant Judge William T. Ailor.[3] [*Id.*]. The Hawks, represented by E. Richard Brabham, III, and Defendant A. Reece Brassler,[4] filed counterclaims against both Axis and its owner, Plaintiff Wendy Rose. [*Id.* at ¶¶ 2, 30]. Judge Ailor held a Zoom hearing in the *in rem* case on January 21, 2021, which Axis's counsel did not attend. [*Id.* at ¶ 33]. Following this hearing, Judge Ailor ordered Axis, Rose, the Hawks, and First US Bank to arbitration. [*Id.*]. When Axis later moved for reconsideration of this order, its motion was denied. [*Id.* at ¶ 34].

Accordingly, Axis filed a demand for arbitration with the AAA. [*Id.* at ¶ 36]. The AAA responded by sending Axis a panel of "Neutrals" including the arbitrator John T. Blankenship. [*Id.* at ¶ 37]. After Axis emailed Brassler this list, Brassler filed a motion on the Hawks' behalf in the

---

[2] Pursuant Axis and the Hawk's agreement, warranty claims were required to first go through the contract's warranty procedures before being submitted to arbitration. [Doc. 29 at ¶ 19]. All other claims concerning the construction agreement went straight to arbitration. [*Id.*].

[3] Judge Ailor was dismissed as a defendant on March 5, 2025, due to Plaintiffs' failure to timely serve him in accordance with the Federal Rules of Civil Procedure. [Doc. 60].

[4] Brabham and Brassler both work for the firm Kennerly, Montgomery & Finley P.C. [Doc. 29 at ¶¶ 6,30]. The Amended Complaint refers to Brabham, Brassler, and potentially the firm as the "KMF Defendants." [*Id.* at ¶ 30]. Given, however, that only Brassler is a defendant in this action, the Court construes all references to actions taken by either "KMF" or the "KMF Defendants" as actions taken by Brassler.

*in rem* case stating that the parties had agreed to use Blankenship as their arbitrator but that Axis was refusing to sign Blankenship's arbitration agreement. [*Id.* at ¶ 38]. A copy of this agreement was attached to the Hawks' motion. [*Id.* at ¶ 39]. This surprised Plaintiffs because they had never seen, let alone agreed, to such a contract. [*Id.* at ¶ 40]. They later learned that Brassler's legal assistant had been in contact with Blankenship regarding arbitration and that Plaintiffs' counsel had not been included in these communications. [*Id.*].

Axis took the position that it did not need to sign Blankenship's arbitration agreement given that Judge Ailor had already ordered the parties to arbitration based on the construction agreement's arbitration clause. [*Id.* at ¶ 41]. Blankenship agreed and suggested the parties submit a joint submission. [*Id.* at ¶ 44]. Brassler, however, informed Plaintiffs that the Hawks would not consent to an AAA arbitration at that time. [*Id.* at ¶ 45]. A month later, Judge Ailor held a status conference to determine, among other things, the proper arbitral forum for the parties' dispute. [*See id.* at ¶ 46; Doc. 1-2 at 71–72[5]]. Following this conference, Judge Ailor ordered the parties to initiate an independent arbitration overseen by Blankenship and governed by the AAA's Commercial Arbitration Rules and Mediation Procedures. [Doc. 29 at ¶¶ 46, 48; Doc. 1-2 at 71–72].

In the months that followed, Plaintiffs filed two motions to set aside/vacate orders entered in the *in rem* case but did not appear at the hearings on those motions, both of which were ultimately denied. [*See* Doc. 29 at ¶¶ 54–55]. Plaintiffs' counsel missed at least one of these hearings because the hearing notice was sent via email and ended up in counsel's spam folder. [*Id.*

---

[5] The Court may consider this and other exhibits to the First Amended Complaint when ruling on the Defendants' motions to dismiss without converting those motions into ones for summary judgment. *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) ("When a court is presented with a Rule 12(b)(6) motion, it may consider the Complaint and any exhibits attached thereto…so long as they are referred to in the Complaint and are central to the claims contained therein").

at ¶ 56]. Plaintiffs later filed one more motion objecting to orders entered in the *in rem* case, but that motion was also denied. [*Id.* at ¶¶ 57–58]. As a result, Axis ultimately lost its lien on the Hawks' property. [*See* Doc. 1-2 at 98–102]. Feeling stymied at every turn, Plaintiffs turned to this Court.

Plaintiffs blame their lack of success in the *in rem* case on a supposed conspiracy among several of the Defendants. They claim that Defendants Knox County, Westling, and Brassler (along with Judge Ailor) conspired to deprive them of notice and an opportunity to be heard in the *in rem* case in retaliation for both (i) their counsel's involvement in *Murphy v. Town of Farragut*, 3:23-cv-402, and (ii) Rose's communications with Knox County officials. [*See* Doc. 29 at ¶¶ 87–96]. They seek compensation for injuries allegedly stemming from this conspiracy and a declaration against Knox County altering the doctrine of judicial immunity as relates to claims involving the Federal Arbitration Act, a statute they claim Judge Ailor failed to follow in the *in rem* case.[6] [*Id.* at ¶¶ 63–79, 87–96]. They also seek compensation from First US Bank for an alleged breach of contract related to the *in rem* case. [*Id.* at ¶¶80–86].

Knox County, Westling, Brassler, and First US Bank have all moved to dismiss Plaintiffs' claims against them. [Docs. 35–36, 54, 73]. The County's, Westling's, and Brassler's Motions are all ripe for review, but the Court cannot address First US Bank's Motion at this time. This is because Westling is representing First US Bank, and Plaintiffs have filed a motion to disqualify both him and the firm he works for, Spicer Rudstrom, PLLC, as First US Bank's counsel. [Doc. 39]. Therefore, this Memorandum Opinion and Order addresses only the County's, Westling's, and Brassler's motions to dismiss before then turning to Plaintiffs' Motion to Disqualify.

---

[6] Plaintiffs originally sought this declaration against Judge Ailor as well. [*See* Doc. 29 at ¶¶ 63–79].

## II. MOTIONS TO DISMISS

Knox County, Westling, and Brassler argue that Plaintiffs have failed to state a claim against them upon which relief can be granted.[7] [Docs. 35, 54, 73]. The Court agrees.[8]

### A. Standard of Review

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft*

---

[7] Brassler also asserts that the Court lacks subject matter jurisdiction over Plaintiffs' claim against him pursuant to the *Rooker-Feldman* doctrine. [Doc. 74 at 24–25]. The Court, however, is not convinced. "The *Rooker-Feldman* doctrine bars lower federal courts from conducting appellate review of final state-court judgments[.]" *Berry v. Schmitt*, 688 F.3d 290, 298 (6th Cir. 2012). For the doctrine to apply, a plaintiff's source of injury must be a state court decision. *Id.* at 298–99 (stating that *Rooker-Feldman* "applies only where a state-court loser initiates an action in federal district court, complaining of injury caused by a state court judgment, and seeks review and rejection of that judgment."). Injuries arising from other sources, such as the actions of third parties, do not fall within *Rooker-Feldman*'s scope. *McCormick v. Braverman*, 451 F.3d 382, 393 (6th Cir. 2006). Here, Plaintiffs allege, albeit insufficiently, that the Defendants' actions during the *in rem* proceedings injured them independently of the ultimate judgment in that case. [*See generally* Doc. 29]. Consequently, *Rooker-Feldman* does not deprive this Court of jurisdiction. *See id.* at 392 (holding that *Rooker-Feldman* did not apply to a plaintiff's claims that the defendants acted fraudulently and illegally during a state divorce proceeding); *see also Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 437 (6th Cir. 2006) (holding that *Rooker-Feldman* did not apply to a claim premised on injuries resulting from a false affidavit introduced in a state court proceeding).

[8] As a preliminary matter, Plaintiffs assert that the Court should not reach the merits of Westling's Motion to Dismiss because he failed to meet and confer with them prior to filing the Motion in violation of this Court's Order. [Doc. 61 at 1–3]. This argument is meritless. As Plaintiffs admit, Westling's counsel emailed Plaintiffs' counsel on Monday, February 10, 2025, to both (1) inform Plaintiffs that Westling intended to file a motion to dismiss and (2) ask Plaintiffs' counsel if he was available to discuss Westling's position in greater detail. [*Id.* at 2–3, 10]. Plaintiffs' counsel responded by stating that he was available to talk that Friday, February 14th. [*Id.* at 2–3, 11]. The problem with this offer, however, was that Westling's response to the First Amended Complaint was due on Wednesday, February 12th. *See* FED. R. CIV. P. 12(a)(1)(A)(i); [Doc. 50]. When Westling's counsel informed Plaintiffs' counsel of this fact, Plaintiffs' counsel did not provide alternative times to discuss Westling's Motion or otherwise respond to Westling's counsel. [*See* Doc. 61 at 3, 13]. Given these circumstances, the Court finds that Westling has satisfied the Court's meet and confer requirement as holding otherwise would be to penalize Westling for Plaintiffs' unilateral actions.

Plaintiffs also assert that the Court should not reach the merits of Brassler's Motion to Dismiss because the brief Brassler filed in support of his Motion exceeds twenty-five pages in violation of Local Rule 7.1. [Doc. 81 at 1]. The Court agrees that Brassler has violated the Local Rules and should therefore be penalized [*see* Doc. 74 (32-page brief excluding certificate of service)], but it disagrees with Plaintiffs' contention that the appropriate sanction is for Brassler's Motion to be denied in its entirety. Rather, the Court finds that the appropriate sanction is for it to simply disregard the arguments raised in the excess pages. This both limits the scope of Brassler's *Rooker-Feldman* argument and totally eliminates his request for attorney's fees (though Brassler remains free to seek attorney's fees through a separate motion).

*v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

### B. Analysis

Plaintiffs allege that Defendants Knox County, Westling, and Brassler (along with former defendant Judge Ailor) conspired against them in violation of 42 U.S.C. § 1983.[9] [Doc. 29 at ¶¶ 87–96]. Such a civil conspiracy is not a separate cause of action but rather a theory for extending Section 1983 liability to defendants who may not have directly violated Section 1983 but nevertheless participated in a conspiracy to do so with a defendant who did. *Delanis v. Metro. Gov't of Nashville*, 697 F. Supp. 3d 748, 782 (M.D. Tenn. 2023). For a Section 1983 civil conspiracy to exist, "a plaintiff must first demonstrate a constitutional deprivation." *Bauss v.*

---

[9] In their Response to Knox County's Motion to Dismiss, Plaintiffs allege—for the first time—that Knox County "enter[ed] into a conspiracy with the co-defendants and other unknown conspirators to violate Plaintiffs' First, Fifth, and Fourteenth Amendment under U.S.C. §§ 1983 *and 1985*." [Doc. 69 at 2 (emphasis added]. "A plaintiff cannot raise new legal claims in response to a dispositive motion filed by the defendant." *Faber v. Smith*, No. 17-2523, 2018 U.S. App. LEXIS 15343, *6 (6th Cir. June 6, 2018). Accordingly, the Court does not address whether Knox County or any other Defendant has violated Section 1985 because Plaintiffs have not properly brought a Section 1985 claim.

*Plymouth Twp.*, 233 F. App'x 490, 496 (6th Cir. 2007); *see also Rapp v. Dutcher*, 557 F. App'x 444, 450 (6th Cir. 2014); *Wiley v. Oberlin Police Dep't*, 330 F. App'x 524, 530 (6th Cir. 2009). If a plaintiff makes this initial showing, then she can expand liability for that deprivation to all conspirators involved by establishing "that (1) a single plan existed, (2) the conspirators shared a conspiratorial objective to deprive the plaintiffs of their constitutional rights, and (3) an overt act was committed." *Revis v. Meldrum*, 489 F.3d 273, 290 (6th Cir. 2007). In addition to expanding the number of defendants against whom a plaintiff can recover, establishing a Section 1983 civil conspiracy comes with a second benefit; it allows a plaintiff to sue private actors for violating of her constitutional rights. Ordinarily, "[a] plaintiff may not proceed under § 1983 against a private party no matter how discriminatory or wrongful the party's conduct." *Tahfs v. Proctor*, 316 F.3d 584, 590 (6th Cir. 2003) (internal quotation marks omitted). But where a private party "is a willful participant in joint activity with the State or its agents[,]" such as through a civil conspiracy, then the private party may be held liable pursuant to Section 1983. *Moore v. Paducah*, 890 F.2d 831, 834 (6th Cir. 1989).

In this case, Plaintiffs allege that Defendants Knox County, Westling, and Brassler conspired to deprive Plaintiffs of their procedural due process rights in the *in rem* case to retaliate against Rose and her husband—Plaintiffs' counsel—for exercising their First Amendment rights. [*See* Doc. 29 at ¶¶ 29–62, 88–90, 92–93]. As detailed below, however, neither Plaintiffs' alleged deprivation of procedural due process nor their First Amendment retaliation claim stand up to scrutiny. And without a constitutional injury, there can be no Section 1983 conspiracy.

1. *Procedural Due Process*

Plaintiffs generally allege that the court in the *in rem* case regularly entered orders adverse to their interests following hearings that their *in rem* counsel did not attend. [*See id.* at ¶¶ 29–62].

They further allege that this lack of attendance was caused, at least in part, by the Knox County Circuit Court Clerk's decision to email rather than mail hearing notices. [*Id.* at ¶ 56]. These allegations are insufficient to state a procedural due process claim.

"The point of procedural due process is to require procedural fairness and to prohibit the state from conducting unfair or arbitrary proceedings.'" *Puckett v. Lexington-Fayette Urban Cnty. Gov't*, 833 F.3d 590, 606 (6th Cir. 2016) (quoting *Garcia v. Fed. Nat'l Mortg. Ass'n*, 782 F.3d 736, 740–41 (6th Cir. 2015)). It requires that parties be afforded "notice and an opportunity to be heard at a meaningful time and in a meaningful manner." *Id.* (internal quotation marks omitted). Plaintiffs allege that they received constitutionally deficient notice of hearings in the *in rem* proceedings because hearing notices were emailed rather than mailed. [Doc. 29 at ¶ 56; *see also* Doc. 69 at 5–7]. The Court has already held that emailing hearing notices was constitutionally adequate under the circumstances. [Doc. 58 at 3–5]. Consequently, Plaintiffs can only establish a procedural due process violation by alleging that they were denied a meaningful opportunity to be heard. *See Puckett*, 833 F.3d at 606. Plaintiffs, however, have failed to do so.

Although Plaintiffs allege that multiple hearings were conducted in the *in rem* case without their presence, they have not alleged that they were barred from these hearings. Instead, they allege that their failure to participate in these hearings was the product of their *in rem* counsel's actions. For example, one of Plaintiffs' lawyers in the *in rem* proceedings missed a Zoom hearing because he misunderstood the court's remote hearing procedures. [*See* Doc. 29 at ¶ 33; Doc. 1-2 at 50–52]. Another of Plaintiffs' *in rem* lawyers missed a hearing because his email sent the relevant hearing notice to a spam folder. [*See* Doc. 29 at ¶ 56]. Therefore, this is not a case where Plaintiffs were denied an opportunity to be heard but rather a case where they did not take advantage of all the opportunities presented to them. In these circumstances, there is no procedural due process

violation. *See Lewis v. Whirlpool Corp.*, 630 F.3d 484, 490 (6th Cir. 2011) ("[D]ue process does not require a hearing, but instead an opportunity to be heard.") (citing *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437 (1982)). This conclusion is only bolstered by the fact that while Plaintiffs' counsel failed to appear at some hearings in the *in rem* case, Plaintiffs' position was still represented throughout the *in rem* proceedings through both their written submissions and their counsel's arguments at the hearings they did attend. [*See* Doc. 1-2 at 35–57, 70–73, 85–103]. Accordingly, Plaintiffs did not suffer a due process violation during the *in rem* case that can give rise to a Section 1983 conspiracy claim.

2. *First Amendment Retaliation*

Plaintiffs allege that Knox County (working in conjunction with the other alleged conspirators) transitioned from mailed to emailed hearing notices to retaliate against Plaintiffs for both (i) Plaintiffs' counsel (who is Rose's husband and was counsel for Plaintiffs during part of the *in rem* case) serving as plaintiffs' counsel in *Murphy v. Town of Farragut*, 3:23-cv-402, and (ii) Rose discussing the same with a Knox County Commissioner.[10] [Doc. 29 at ¶¶ 89–93; *see also* Doc. 69 at 7–8]. These allegations, however, are insufficient to establish a First Amendment retaliation claim.

---

[10] It is doubtful whether the transition from mailed to emailed hearing notices can even be properly attributed to Knox County. A plaintiff can prevail on a Section 1983 claim against a municipality "only if the challenged conduct occurs pursuant to a municipality's official policy, such that the municipality's promulgation or adoption of the policy can be said to have caused one of its employees to violate the plaintiff's constitutional rights." *D'Ambrosio v. Marino*, 747 F.3d 378, 386 (6th Cir. 2014) (cleaned up). Here, Plaintiffs have not alleged that the decision to email hearing notices in the *in rem* case was made pursuant to a Knox County policy or that the Circuit Court Clerk—or any other Knox County employee mentioned in the First Amended Complaint for that matter—is a final policymaker whose actions can be fairly said to represent official Knox County policy. *See Meeks v. City of Detroit*, 727 F. App'x 171 (6th Cir. 2018) ("'[A] single decision to take unlawful action made by municipal policymakers' can give rise to municipal liability." (alteration in original) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 483 (1986)). Accordingly, it does not appear that the transition to emailed hearing notices can be attributed to Knox County. This, however, is largely an academic point because even if the Circuit Court Clerk's actions were properly attributable to Knox County, Plaintiffs' claims would still fail for the reasons stated herein.

To establish a First Amendment retaliation claim, a plaintiff must show (1) that she engaged in protected conduct; (2) that an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) that the adverse action was motivated at least in part by her protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). This is a particularly context-intensive inquiry given the broad range of rights protected by the First Amendment and the differing levels of protection the First Amendment affords in different circumstances. *Id.* at 388. Looking to the circumstances of this case, it is apparent that Plaintiffs have not adequately alleged a First Amendment retaliation claim.

Starting with whether Plaintiffs have engaged in protected conduct, they claim that both Rose and Plaintiffs' counsel have done so. [*See* Doc. 29 ¶¶ 89–90]. As an initial matter, it is not clear to the Court how Plaintiffs' counsel's exercise of *his* First Amendment rights is relevant to a claim that Plaintiffs were retaliated against for exercising *their* First Amendment rights. This, however, is immaterial to the Court's analysis because even assuming that the Court could consider Plaintiffs' counsel's First Amendment activities, actions taken on behalf of a client during litigation are not constitutionally protected speech. *Mezibov v. Allen*, 411 F.3d 712, 720-721 (6th Cir. 2005) ("[A]n attorney retains no personal First Amendment rights when representing his client in [court] proceedings."). Consequently, Plaintiffs' counsel's activities during the *Murphy* lawsuit do not qualify as protected conduct that could give rise to a First Amendment retaliation claim. *Id.* That said, Plaintiffs do not base their First Amendment retaliation claim on the activities of Plaintiffs' counsel alone. They also claim that Rose discussed the alleged fraud underlying the *Murphy* lawsuit with a Knox County Commissioner. [Doc. 29 at ¶ 90]. At this stage of the proceedings, the Court finds that this allegation is sufficient to establish that Rose engaged in

protected conduct. *See Lane v. Franks*, 573 U.S. 228, 235 (2014). ("Speech by citizens on matters of public concern lies at the heart of the First Amendment[.]").

As a result, the Court must next evaluate whether Plaintiffs suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in protected conduct. *Thaddeus-X*, 175 F.3d at 394. In conducting this evaluation, the Court must "tailor [its] analysis…to the circumstances of this specific retaliation claim." *Mezibov*, 411 F.3d at 721 (cleaned up). Thus, the specific question before the Court is whether the alleged transition from mailed to emailed hearing notices would deter a litigant of ordinary firmness from continuing to raise concerns with elected officials. *See id.* The Court finds that it would not. Transitioning from mailed to emailed notices does not affect the notice's contents, only its form. It would be just as easy, and perhaps even easier, for a litigant to remain apprised of developments in her case by receiving notices through email rather than mail. Furthermore, litigants are generally represented by counsel and rightly expect that counsel will actively monitor the status of their case. Thus, if an ordinary litigant was to learn that hearing notices were being emailed in retaliation for some protected conduct, it appears to the Court that she would simply either check her email more regularly or direct her counsel to do the same. The Court does not find that an ordinary litigant would forego her protected conduct to avoid the likely nonexistent burden that would accompany a transition to emailed hearing notices. Accordingly, the Court finds that Plaintiffs have failed to adequately allege that they suffered an adverse action that would deter a person of ordinary firmness from continuing to engage in protected conduct. *See Thaddeus-X*, 175 F.3d at 394; *Mezibov*, 411 F.3d at 721.

Furthermore, even if Plaintiffs were able to establish that the transition to emailed hearing notices qualifies as an "adverse action," their First Amendment retaliation claim would still fail

because they have not connected this alleged harm to Rose's protected conduct. *Thaddeus-X*, 175 F.3d at 394. To establish a First Amendment retaliation claim, "a plaintiff must demonstrate that her protected speech is 'a substantial or motivating factor' of the adverse action." *Ehrlich v. Kovack*, 710 Fed. App'x. 646, 650 (6th Cir. 2017) (quoting *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 400 (6th Cir. 2010)). Plaintiffs, however, have failed to allege how the transition to emailed hearing notices in the *in rem* case was linked to Rose's protected conduct in any way. Rather, the First Amended Complaint merely alleges that the Circuit Court Clerk "took it upon himself to email hearing notices rather than mailing them[.]" [Doc. 29 at ¶ 56]. Plaintiffs do not allege that the Clerk did this in response to Rose's protected conduct, that he knew of Rose's protected conduct, or even that he knew who Rose was. In these circumstances, Rose's conduct cannot be considered "a substantial or motivating factor" behind the decision to email hearing notices. Consequently, this provides another basis for finding that Plaintiffs have failed to sufficiently allege a First Amendment retaliation claim. *See Thaddeus-X*, 175 F.3d at 394; *Ehrlich*, 710 Fed. App'x. at 650.

And without either their First Amendment retaliation claim or their procedural due process claim, Plaintiffs cannot establish a Section 1983 civil conspiracy. *E.g.*, *Bauss*, 233 F. App'x at 496. Similarly, the lack of a constitutional violation also means that Plaintiffs cannot pursue a declaratory judgment against Knox County because a "[d]eclaratory judgment…is not a cause of action, but a specific type of relief." *Duncan v. TVA Ret. Sys.*, 123 F. Supp. 3d 972, 982 (M.D. Tenn. 2015). For it to be available, a plaintiff "must first succeed on a cognizable cause of action." *Id.* As Plaintiffs have failed to adequately allege a cause of action against Knox County, their

request for declaratory relief must necessarily be denied.[11] *See id.* This just leaves the issue of Plaintiffs' Motion to Disqualify Westling as First US Bank's counsel.

### III. MOTION TO DISQUALIFY

Plaintiffs ask the Court to disqualify Westling and the firm that employs him, Spicer Rudstrom, PLLC, from continuing to represent First US Bank in this matter. [Doc. 39] As Plaintiffs' arguments are meritless, their Motion [Doc. 39] is **DENIED**.

#### A. Standard of Review

"Courts must be vigilant in reviewing motions to disqualify counsel as the ability to deny one's opponent the services of capable counsel is a potent weapon that can be misused as a technique of harassment." *Moses v. Sterling Commerce (America), Inc.*, 122 F. App'x 177, 183 (6th Cir. 2005) (cleaned up). To avoid this potential for abuse, "[a] court should only disqualify an attorney when there is a reasonable possibility that some specifically identifiable impropriety actually occurred." *Id.* at 183–84 (internal quotation marks omitted). Identifying whether such an impropriety exists "generally turns on the 'peculiar factual situation at hand.'" *Escordi v. Macomb Twp.*, No. 21-10570, 2022 U.S. Dist. LEXIS 91449, *7 (E.D. Mich. May 20, 2022) (quoting *In re Mechem*, 880 F.2d 872, 874 (6th Cir. 1989)). In evaluating the facts of a specific case, a court may—but is not required to—hold an evidentiary hearing. *In re Mechem*, 880 F.2d at 875.

#### B. Analysis

Plaintiffs assert that Westling and Spicer Rudstrom, PLLC, must be disqualified as counsel in this matter because (1) Westling is a named defendant in this action and therefore has a conflict of interest with First US Bank, (2) Westling is a necessary witness in this action, and (3) Westling

---

[11] Because Plaintiffs are not entitled to declaratory relief by virtue of their failure to adequately allege a claim against Knox County, the Court does not address whether Knox County would be the proper entity against which to seek a declaration regarding the scope of judicial immunity where no Knox County judge was involved in the *in rem* case. [*See* Doc. 60 at 2–3 (noting that former defendant Judge Ailor is a state, not county, official)].

is not authorized to "provid[e] legal advice to an Alabama client, where he is not licensed to practice." [Doc. 39]. None of these arguments have any merit.[12]

Starting with Plaintiffs' contention that Westling's status as a named defendant creates a conflict of interest between him and First US Bank, this is no longer an issue. This Memorandum Opinion and Order dismisses the claims against Westling meaning that any conflict that may have been present has since been eliminated. Furthermore, even if a conflict was present, Tennessee's Rules of Professional Conduct allow an attorney to represent a client notwithstanding a conflict of interest if:

> (1) the lawyer reasonably believes that the lawyer will be able to provide competent and diligent representation to each affected client;
> (2) the representation is not prohibited by law;
> (3) the representation does not involve the assertion of a claim by one client against another client represented by the lawyer in the same litigation or other proceeding before a tribunal; and
> (4) each affected client gives informed consent, confirmed in writing.

Tenn. Sup. Ct. R. 8, Rule 1.7(b). Here, Westling has stated that he believes he would be able to provide competent representation to First US Bank notwithstanding the claims against him [Doc. 45 at 6]; the Court has not been directed to any authority suggesting that it would be illegal for Westling to continue representing First US Bank; there are no assertions by First US Bank against Westling or vice versa; and Westling has represented on behalf of First US Bank that First US Bank consents to his continued representation [*id.*]. In these circumstances, it does not appear that Westling's disqualification would be required even if he remained a named defendant in this action.

---

[12] Although Plaintiffs seek the disqualification of both Westling and Spicer Rudstrom, PLLC, the Court's analysis centers on whether Westling must be disqualified because whether Spicer Rudstrom must be disqualified in this case is derivative of whether Westling may continue representing First US Bank.

Looking next to Plaintiffs' contention that Westling is a necessary witness in this matter, the Court finds that he is not. Plaintiffs appear to assert that Westling is a necessary witness because he acted as counsel in the *in rem* case and participated in the hearings that Plaintiffs' counsel did not attend. [*See* Doc. 39 at 1; *see also* Doc. 13 at ¶¶ 3–7]. There are at least two fatal flaws to this argument. *First*, the propriety of Knox County, Westling, and Brassler's actions during the *in rem* case is no longer at issue. As this Memorandum Opinion and Order dismisses the claims against Knox County, Westling, and Brassler, this case has become nothing more than a breach of contract action between Plaintiffs and First US Bank concerning conduct that predated the commencement of the *in rem* case. [*See* Doc. 29 at ¶¶ 80–86]. Consequently, any testimony that Westling could offer regarding the course of the *in rem* proceedings is irrelevant, and a witness cannot be necessary if they can only offer irrelevant testimony. *Second*, "[f]or a lawyer to be a necessary witness, his testimony must be relevant, material, *and unobtainable elsewhere*." *Rothberg v. Cincinnati Ins. Co.*, No. 1:06-CV-111, 2008 U.S. Dist. LEXIS 45969, *6 (E.D. Tenn. June 11, 2008) (emphasis added). Here, Plaintiffs assert that Westling will be needed to testify about actions that took place during hearings in the *in rem* case. But because Westling was not the only person to attend these hearings, his testimony concerning them is not "unobtainable elsewhere." *Id.* Therefore, he would not be a necessary witness even if his testimony was relevant to the remaining issues in this case.

Finally, Plaintiffs assert that Westling must be disqualified because he cannot "provid[e] legal advice to an Alabama client, where he is not licensed to practice." [Doc. 39 at 3]. Plaintiffs cite Rule 1.7 of the Tennessee Rules of Professional Conduct in support of this proposition. [*Id.*]. But Rule 1.7 concerns conflicts of interest, not licensing requirements. Accordingly, it is not clear to the Court how Rule 1.7 supports Plaintiffs' position. This lack of clarity is amplified by the fact that Plaintiffs have not attempted to explain Rule 1.7's applicability or offer any arguments in

support of their conclusory assertion that Westling's lack of an Alabama law license means he must be disqualified as First US Bank's counsel. [*See id.*]. In these circumstances, the Court finds Plaintiffs' argument to be underdeveloped and therefore waived. *McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to put flesh on its bones." (internal quotation marks and alterations omitted)).

Accordingly, the Court finds that none of Plaintiffs' arguments for disqualifying Westling—and by extension Spicer Rudstrom, PLLC—have any merit. Therefore, Plaintiffs' Motion to Disqualify [Doc. 39] is **DENIED**.[13]

## IV.  CONCLUSION

For the foregoing reasons, the Motions to Dismiss [Docs. 35, 54, 73] are **GRANTED,** and Plaintiffs' Motion to Disqualify Counsel [Doc. 39] is **DENIED**. Defendants Knox County, Westling, and Brassler are hereby **DISMISSED** from this action. With their dismissal, this is now solely a breach of contract case between Plaintiffs and Defendant First US Bank.

Additionally, because the Court has determined that Westling and Spicer Rudstrom, PLLC, may continue representing First US Bank in this matter, there is no reason to further delay the resolution of First US Bank's Motion to Dismiss [Doc. 36]. Plaintiffs are therefore **ORDERED** to respond to First US Bank's Motion [Doc. 36] **on or before July 15, 2025**. Plaintiffs are placed

---

[13] Although Plaintiffs' Motion is meritless, the Court will not sanction Plaintiffs' counsel pursuant to 28 U.S.C. § 1927 as requested by First US Bank because, as the Court noted *supra* note 1, a party cannot seek affirmative relief through a responsive filing. If First US Bank wishes to request Section 1927 sanctions against Plaintiffs' counsel, it must do so through a separate motion.

**ON NOTICE** that any request to extend this deadline will be met with increased scrutiny given the number of extensions already granted in this matter.

      **SO ORDERED**.

                                             */s/ Charles E. Atchley, Jr.*
                                             **CHARLES E. ATCHLEY, JR.**
                                             **UNITED STATES DISTRICT JUDGE**