UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| AXIS DYNAMICS, INC., *et al.*, | ) | |
|---|---|---|
| *Plaintiffs*, | ) | Case No. 3:24-cv-329 |
| v. | ) | Judge Atchley |
| KNOX COUNTY, TENNESSEE, *et al.*, | ) | Magistrate Judge McCook |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendant First US Bank's ("FUSB") Motion to Dismiss [Doc. 36] and Plaintiffs' Motion for Interlocutory Appeal [Doc. 84]. For the following reasons, FUSB's Motion [Doc. 36] is **GRANTED**, and Plaintiffs' Motion [Doc. 84] is **DENIED AS MOOT**.

### I. BACKGROUND

This case, as it currently exists, is a breach of contract action between Plaintiffs and FUSB. Plaintiff Wendy Rose is the owner and CEO of Plaintiff Axis Dynamics Inc., a building contractor. [Doc. 29 at ¶¶ 1–2, 9]. In 2018, Axis agreed to build a house for Christopher and Sonja Hawk in Knox County, Tennessee. [*Id.* at ¶ 15]. To finance this construction, the Hawks entered into a Construction Loan Agreement with FUSB. [*Id.* at ¶ 81; Doc. 37-3 (Construction Loan Agreement)[1]]. Plaintiffs claim that Axis was a third-party beneficiary to this contract, and that FUSB has breached its obligations under it. [Doc. 29 at ¶¶ 80–86].

---

[1] The Court may consider this contract without turning the instant motion into one for summary judgment as the contract is referenced in the Amended Complaint and central to the claims therein. *Kyrkanides v. Univ. of Ky.*, No. 19-6348, 2020 U.S. App. LEXIS 24014, at *5 (6th Cir. July 29, 2020) ("In considering a motion to dismiss, a court may consider exhibits attached to the complaint, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the complaint and are central to the claims contained therein." (cleaned up)).

The Construction Loan Agreement authorized, but did not require, FUSB to pay the Hawks' contractors directly for construction costs. [Doc. 37-3 at ¶ 11(B)[2]]. FUSB took advantage of this direct payment option, depositing constructions funds in Axis's FUSB account. [Doc. 29 at ¶¶ 25, 84]. As construction on the Hawks' house progressed, Axis spent more than $100,000 of its own money on labor and materials. [*Id.* at ¶ 27]. Axis subsequently demanded $69,800 in costs plus interest from both FUSB and the Hawks. [*Id.* at ¶ 28]. When neither responded, Axis filed a Mechanic's Lien with the Knox County Register of Deeds. [*Id.*]. Axis then filed an *in rem* case in Knox County Circuit Court to enforce its lien. [*Id.* at ¶ 29]. Rather than enforce the lien, however, the Knox County Circuit Court sent the parties before it to arbitration and ultimately confirmed an arbitration award that discharged Axis's lien. [*See id.* at ¶¶ 33–61, Doc. 1-2 at 98–102[3]]. This lawsuit followed.

Plaintiffs initially brought three claims: (1) the breach of contract claim against FUSB; (2) a declaratory judgment claim against Knox County and the judge who presided over the *in rem* case; and (3) a Section 1983 civil conspiracy claim against Knox County, the *in rem* judge, and the lawyers involved in the *in rem* case. [Doc. 29 at ¶¶ 63–96]. These latter two claims have since been dismissed. [Docs. 60, 83]. Now, FUSB moves to dismiss Plaintiffs' breach of contract claim [Doc. 36], and Plaintiffs request permission to file an interlocutory appeal regarding the dismissal of their second and third claims [Doc. 84]. The remainder of this Memorandum Opinion and Order

---

[2] "[FUSB] may make advances payable to [the Hawks] or jointly to [the Hawks] and Project's general contractor, the subcontractors or the material suppliers for the amounts due under the Construction Contract. Alternatively, [FUSB] may make payments for the Project's construction costs directly to any contractor, subcontractor, material supplier; this power is coupled with an interest that makes it irrevocable and survives [the Hawks'] default. Any disbursement may be deposited into an account established by [the Hawks] or another payee entitled to payment under the Construction Contract…" [Doc. 37-3 at ¶ 11(B)].

[3] The Court may consider this state court order without converting the instant motion into one for summary judgment. *Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 816 (6th Cir. 2010) ("Although typically courts are limited to the pleadings when faced with a motion under Rule 12(b)(6), a court may take judicial notice of other court proceedings without converting the motion into one for summary judgment.").

will primarily address FUSB's Motion as its resolution moots Plaintiffs' request for an interlocutory appeal.

## II. STANDARD OF REVIEW

On a motion to dismiss, the Court "must accept as true 'well pleaded facts' set forth in the complaint." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 548 (6th Cir. 1999) (citation omitted). "[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Generally, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007)). "The [plaintiff's] factual allegations, assumed to be true, must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007). "Mere labels and conclusions are not enough; the allegations must contain 'factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Id.* at 575 (quoting *Ashcroft*, 556 U.S. at 678). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, and the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

## III. ANALYSIS

FUSB argues that Plaintiffs' breach of contract claim must be dismissed because Axis is not a third-party beneficiary of the Construction Loan Agreement. FUSB further argues that Plaintiffs' breach claim is barred by the doctrine of res judicata following the *in rem* case. Plaintiffs contest both arguments. They assert that the terms of the Construction Loan Agreement clearly

establish that Axis is an intended third-party beneficiary of the contract and that their breach claim is sufficiently distinct from their *in rem* claims to avoid res judicata. After careful consideration, the Court agrees with FUSB that Axis is not a third-party beneficiary to the Construction Loan Agreement. As this conclusion mandates the dismissal of Plaintiffs' beach claim, the Court does not reach FUSB's res judicata argument.

Before turning to why Axis is not a third-party beneficiary, the Court must first explain what law governs the parties' dispute. The Construction Loan Agreement contains a choice of law provision that provides, "This Agreement is governed by the laws of Alabama, the United States of America, and to the extent required, by the laws of the jurisdiction where the Property is located, except to the extent such state laws are preempted by federal law." [Doc. 37-3 at ¶ 17]. No party has asserted that this provision violates Tennessee's choice of law rules, which governs the Court's analysis here,[4] or that the provision is otherwise invalid. Accordingly, the Court finds that the Construction Loan Agreement's choice of law provision is enforceable. Therefore, the Construction Loan Agreement is governed by federal law (which is not relevant to Plaintiffs' breach claim), Alabama law, and, to the extent required, Tennessee law. [*Id.*; Doc. 29 at ¶ 15].

FUSB argues that Axis does not qualify as a third-party beneficiary under either Alabama or Tennessee law because FUSB and the Hawks did not intend to grant Axis a direct benefit under the Construction Loan Agreement. [Doc. 37 at 4–9]. Plaintiffs counter that the contract's direct payment mechanism demonstrates such an intent under Alabama law, and they argue that Tennessee law is not applicable to the question of who qualifies as a third-party beneficiary. [Doc. 89 at 3–5]. FUSB has the better argument as to what it and the Hawks intended in the Construction

---

[4] *Wright v. Linebarger Googan Blair & Sampson, Ltd. Liab. P'ship*, 782 F. Supp. 2d 593, 601 (W.D. Tenn. 2011) ("In a diversity action, state substantive law governs. A federal district court is required to apply the choice of law rules of the state in which it sits." (internal citations omitted)).

Loan Agreement. As for whether Tennessee law plays any role in the parties' dispute, this argument is largely academic as there are no dispositive differences between Alabama and Tennessee law.

Under both Alabama and Tennessee law, "third parties may enforce a contract if they are intended beneficiaries of the contract." *Owner-Operator Indep. Drivers Ass'n v. Concord Efs*, 59 S.W.3d 63, 68 (Tenn. 2001); *Airlines Reporting Corp. v. Higginbotham*, 643 So. 2d 952, 954 (Ala. 1994) (stating that "a direct third-party beneficiary may sue on the contract" provided that the third party "establish[es] that the contracting parties intended, at the time the contract was created, to bestow a direct benefit upon [it]"). Incidental benefits are not enough. *Swann v. Hunter*, 630 So. 2d 374, 376 (Ala. 1993); *First Tenn. Bank Nat'l Ass'n v. Thoroughbred Motor Cars*, 932 S.W.2d 928, 930 (Tenn. Ct. App. (1996) ("Tennessee recognizes two categories of third party beneficiaries, intended and incidental. Only if a party is an intended beneficiary may it maintain an action to enforce the contract."). The contracting parties must intend to confer a direct benefit on the third party for the third party to gain enforceable rights under the contract. *Swann*, 630 So. 2d at 376; *First Tenn. Bank Nat'l Ass'n*, 932 S.W.2d at 930. Furthermore, both Alabama and Tennessee law hold that where the contracting parties have expressly disclaimed the creation of any third-party rights, courts should honor the parties' stated intent. *Owner-Operator Indep. Drivers Ass'n*, 59 S.W.3d at 70 ("[C]ourts should honor any expression of intent by the parties to reserve to themselves the benefits of the contract."); *Mills v. Welk*, 470 So. 2d 1226, 1229 (Ala. 1985) ("'Where, however, two contracting parties expressly provide that a third party shall have no legally enforceable rights in their agreement, a court must effectuate the expressed intent by denying the third party any direct remedy.'" (quoting *Fed. Mogul Corp. v. Universal Constr. Co.*, 376 So. 2d 716, 724 (Ala. Civ. App. 1979)).

Here, the Construction Loan Agreement contains states: "[FUSB] and [the Hawks] do not intend to create any third-party beneficiary rights under this Agreement. No one other than [the Hawks] will have any right to obtain or compel a disbursement of the Loan's reserves of proceeds." [Doc. 37-3 at ¶ 13(E)]. As this provision expressly disclaims the creation of any third-party rights, Axis is not a third-party beneficiary of the Construction Loan Agreement under either Alabama or Tennessee law. *Owner-Operator Indep. Drivers Ass'n*, 59 S.W.3d at 70; *Mills*, 470 So. 2d at 1229. Plaintiffs' arguments to the contrary, which only address Alabama law, are unconvincing.

Plaintiffs argue that although Alabama law allows parties to disclaim the creation of third-party rights, "Ala. Code § 7-5-116(4) permits enforcement" by third parties "when other provisions evince direct intent." [Doc. 89 at 4; Doc. 90 at 2 ("Boilerplate 'no third-party rights' clauses do not override other provisions showing intent to benefit a third party. Ala Code § 7-5-116(4).")]. They claim that the Construction Loan Agreement's direct payment mechanism establishes such an intent because it demonstrates that one of the contract's core functions was to "guarantee draws to contractors[.]" [Doc. 89 at 3–5; *see also* Doc. 90 at 2–3]. There are two problems with Plaintiffs' argument. First, the authority Plaintiffs cite in support of their position either does not exist or does not support the proposition that a third-party rights disclaimer can be overcome by other contractual provisions demonstrating an intent to benefit a third party. Second, the Construction Loan Agreement's provision allowing for direct payment does not demonstrate an intent to directly benefit Axis as Plaintiffs claim.

Starting with Ala. Code § 7-5-116(4), Plaintiffs cite it for the proposition that "[b]oilerplate 'no third-party rights' clauses do not override other provisions showing intent to benefit a third party." [Doc. 90 at 2]. Plaintiffs further attempt to bolster Section 7-5-116(4)'s weight by citing to *Landale Enterprises, Inc. v. Berry*, 676 F.2d 506 (11th Cir. 1982). [Doc. 89 at 4 ("Even with a

blanket 'no third-party rights' clause, Ala. Code § 7-5-116(4) permits enforcement when other provisions evince direct intent. See Landale Enters. v. Berry, 676 F.2d 506, 512 (11th Cir. 1982).)"]. The issue Plaintiffs face, however, is that Ala. Code § 7-5-116(4) does not exist. Section 7-5-116 exists more generally but there is no subsection (4). Furthermore, Section 7-5-116 does not address third-party rights disclaimers. Instead, Section 7-5-116 addresses Alabama's choice of law and forum rules for disputes involving letters of credit. Ala. Code § 7-5-116. Considering the foregoing, it should come as no shock that *Landale Enterprises* does not cite Section 7-5-116, whether with the fictitious subsection (4) or otherwise, for the proposition that third-party rights disclaimers can be defeated by other contractual provisions.[5] In fact, *Landale Enterprises* does not address third-party rights disclaimers at all but instead concerns a contractual provision wherein a buyer disclaimed reliance on representations made by others during the course of a transaction. 676 F.2d at 507–08. The *Landale Enterprises* Court relied on this disclaimer to affirm the dismissal of a civil fraud claim brought by the buyer against the seller and its agents after they allegedly mispresented key facts concerning the transaction underlying the contract. *Id.* at 508. In short then, neither Section 7-5-116 (as it actually exists) or *Landale Enterprises* supports Plaintiffs' argument.

Turning to *Meridian Mutual Insurance Company v. Huntsville*, 141 So. 3d 415 (Ala. 2013), Plaintiffs assert that in this case, the Alabama Supreme Court "held that a nonparty may enforce a contract where the agreement's mechanics benefit the claimant." [Doc. 89 at 4; *see also* Doc. 90 at 2 ("By contrast, Meridian Mut. Ins. Co. v. Huntsville held that an insurer's obligation to issue renewal notices conferred a direct benefit on insureds' lessees despite a disclaimer. 141 So. 3d 415, 421 (Ala. 2013).")]. It does not appear, however, that this case exists. When the Court

---

[5] *Landale Enterprises* also likely does not cite Section 7-5-116 because *Landale Enterprises* was written in 1982, and Section 7-5-116 did not become part of the Alabama Code until 1997. *See Landale Enters., Inc. v. Berry*, 676 F.2d 506 (11th Cir. 1982); 1997 Al. HB 374.

attempted to locate the *Meridian* case, it instead found an opinion from the Mississippi Court of Appeals affirming a sex offender's conviction and sentence. *See Ellis v. State*, 141 So. 3d 415 (Miss. App. 2013). Recognizing that even the best lawyers sometimes make citation errors, the Court next attempted to locate the *Meridian* case by searching for its caption. This proved similarly unfruitful. Therefore, *Meridian* does support Plaintiffs' position as the case does not exist.

Looking next to *Iskra v. Bear Roofing, LLC*, 406 So. 3d 51 (Ala. 2024), Plaintiffs assert that this case "reaffirmed that a disclaimer cannot defeat clear contractual intent to benefit a third party when the contract's mechanics directly serve that party." [Doc. 90 at 2–3; *see also* Doc. 89 at 4]. Unlike *Meridian*, this case does exist, and it even concerns the rights of third-party beneficiaries. *See generally Iskra*, 406 So. 3d 51. But contrary to Plaintiffs' assertion, it does not involve a third-party rights disclaimer or even mention how such a disclaimer might impact a court's analysis. *See generally id.* Rather, it simply held that there was a genuine issue of material fact as to whether the plaintiffs were third-party beneficiaries of a repair contract between a home seller and a roofing company where the repair contract was executed to facilitate the sale of a house to the plaintiffs. *Id.* at 55–56.

It is a similar case with *Ex parte Stamey*, 776 So. 2d 85 (Ala. 2000). Plaintiffs cite *Ex parte Stamey* for the proposition that "contract terms and circumstances showing third-party focus overcome a general disclaimer[.]" [Doc. 89 at 5]. But *Ex parte Stamey*, like *Iskra*, did not involve a contract containing a third-party rights disclaimer, nor did the *Ex parte Stamey* Court explain how such a disclaimer would have altered its analysis. *See generally* 776 So. 2d 85. Rather, the *Ex parte Stamey* Court simply held that a mobile home financing contract between a financier and buyers vested the mobile home seller with enforceable third-party rights because (i) the contract called for the financier to pay the seller directly *and* (ii) the buyers expressly waived their right to

- 8 -

Case 3:24-cv-00329-CEA-JEM    Document 92    Filed 07/29/25    Page 8 of 12    PageID #: 960

a jury trial in any litigation between them and the seller (as opposed to the financier). *Id.* at 92–93. While both this case and *Iskra* support the proposition that a third party may have enforceable contract rights under Alabama law, neither suggests that a third-party rights disclaimer is invalid merely because other contractual provisions appear to benefit third parties as Plaintiffs claim.

Looking finally to *Brown v. Gadsden Regional Medical Center*, LLC, 748 Fed. App'x 930 (11th Cir. 2018), Plaintiffs assert that in this case, the Eleventh Circuit (applying Alabama law) "recognized that a direct-payment requirement created a third-party beneficiary right." [Doc. 90 at 2]. But this is not what *Brown* held. To the contrary, *Brown* expressly held that a group of individuals were not third-party beneficiaries to a contract because the at-issue contract contained a third-party rights disclaimer. 748 Fed. App'x at 933. Therefore, not only does *Brown* not stand for Plaintiffs' cited proposition, it also directly undercuts their argument that Axis is a third-party beneficiary of the Construction Loan Agreement.

In short, none of Plaintiffs' cited authority supports their position that Axis has enforceable third-party rights under the Construction Loan Agreement notwithstanding the third-party rights disclaimer, and some of their cited authority does not even exist.[6] These deficiencies severely undercut Plaintiff's argument. That said, the Court recognizes that while Plaintiffs have utterly failed to support their position, there is some validity to their general argument that a third-party rights disclaimer may not always be enforceable. A court's paramount concern when interpreting a contract is to give effect to the contracting parties' intent. *Parr v. Godwin*, 463 So. 2d 129, 132

---

[6] The Court cannot say whether this is the product of a lack of diligence, an irresponsible use of generative artificial intelligence, or an intentional attempt to mislead the Court. In any event, Plaintiffs' counsel is **REMINDED** that the Tennessee Rules of Professional Conduct and the Federal Rules of Civil Procedure prohibit misrepresenting the law to the Court. *See* Tenn. Sup. Ct. R. 8, Rule 3.3; Fed. R. Civ. P. 11(b); *Penn, LLC v. Prosper Bus. Dev. Corp.*, 773 F.3d 764, 766 (6th Cir. 2014) ("Rule 11 imposes on attorneys a duty to reasonably investigate factual allegations and legal contentions before presenting them to the court."). Plaintiffs' counsel is hereby placed **ON NOTICE** that future citations to fictitious authority or the misrepresentation of actual authority will result in sanctions.

(Ala. 1984); *Allmand v. Pavletic*, 292 S.W.3d 618, 630 (Tenn. 2009). And when a contract contains a third-party rights disclaimer, it is generally reasonable to infer that the contracting parties did not intend to create third-party rights. *See Mills*, 470 So. at 1229; *Owner-Operator Indep. Drivers Ass'n*, 59 S.W.3d at 70. This, however, may not always be the case. Ambiguous or contradictory terms could call into question whether the contracting parties truly intended to avoid the creation of third-party rights.[7] In such circumstances, it would be for a court to determine what the parties intended. This could to the invalidation of some third-party rights disclaimers, but such is not the case here.

The Construction Loan Agreement is neither ambiguous nor contradictory; it clearly does not vest Axis with enforceable third-party rights. Plaintiffs base their argument that Axis is a third-party beneficiary on the fact that the Construction Loan Agreement permits, but does not require, FUSB to pay Axis directly for construction costs.[8] [Doc. 89 at 4–5; Doc. 90 at 2–3]. Plaintiffs contend that this direct payment mechanism demonstrates that FUSB and the Hawks intended to confer a direct benefit on Axis by ensuring that it was paid for its work. [Doc. 89 at 4–5; Doc. 90 at 2–3]. The Court is not convinced.

First, if FUSB and the Hawks intended the Construction Loan Agreement to guarantee that contractors like Axis were paid, then it seems likely that the Construction Loan Agreement would

---

[7] For example, a contract could simultaneously state that it did not create any third-party rights and that it was entered into for the benefit of a non-contracting party. In such a case, a court would have to determine whether the two provisions could be read harmoniously, and if not, which provision controlled. *See Sullivan, Long & Hagerty v. S. Elec. Generating Co.*, 667 So. 2d 722, 725 (Ala. 1995); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999).

[8] As a reminder, this provision states:
> [FUSB] may make advances payable to [the Hawks] or jointly to [the Hawks] and Project's general contractor, the subcontractors or the material suppliers for the amounts due under the Construction Contract. Alternatively, [FUSB] may make payments for the Project's construction costs directly to any contractor, subcontractor, material supplier; this power is coupled with an interest that makes it irrevocable and survives [the Hawks'] default. Any disbursement may be deposited into an account established by [the Hawks] or another payee entitled to payment under the Construction Contract…

[Doc. 37-3 at ¶ 11(B)].

- 10 -

Case 3:24-cv-00329-CEA-JEM    Document 92    Filed 07/29/25    Page 10 of 12
PageID #: 962

have required FUSB to make payments to third parties instead of merely permitting it. [*See* Doc. 37-3 at ¶ 11(B)]. Second, contractual provisions cannot be read in isolation. *Booth v. Newport TV, LLC*, 111 So. 3d 719, 725 (Ala. Civ. App. 2011) (citing *Certain Underwriters at Lloyd's, London v. Kirkland*, 69 So. 3d 98, 101 (Ala. 2011)); *see also Perkins v. Metro. Gov't of Nashville & Davidson Cnty.*, 380 S.W.3d 73, 85 (Tenn. 2012). Rather, courts must look to the entirety of an agreement to discern the contracting parties' intent. *See Booth*, 111 So. 3d at 725; *Perkins*, 380 S.W.3d at 85. In doing so, courts attempt to harmonize contractual provisions and avoid interpretations that render certain provisions invalid or otherwise contradictory. *Sullivan, Long & Hagerty v. S. Elec. Generating Co.*, 667 So. 2d 722, 725 (Ala. 1995) ("Terms of a written instrument should be construed *in pari materia* and a construction adopted that gives effect to all terms used. Inconsistent parts in a contract are to be reconciled, if susceptible of reconciliation[.]" (internal citation omitted)); *Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999) ("All provisions in the contract should be construed in harmony with each other, if possible, to promote consistency and to avoid repugnancy between the various provisions of a single contract.").

Therefore, the Court cannot determine whether Axis is a third-party beneficiary by looking to the provision authorizing direct payment alone. Instead, the Court must look to the entirety of the Construction Loan Agreement, including its third-party rights disclaimer, to determine FUSB and the Hawks' intent.[9] *See Sullivan, Long & Hagerty*, 667 So. 2d at 725; *Guiliano*, 995 S.W.2d at 95. Performing this task, it is readily apparent that FUSB and the Hawks did not intend to give Axis any enforceable third-party rights. Although the Construction Loan Agreement authorized FUSB to pay Axis directly, only the Hawks had "any right to obtain or compel a disbursement of

---

[9] As the Court has previously noted, this disclaimer states, "[FUSB] and [the Hawks] do not intend to create any third-party beneficiary rights under this Agreement. No one other than [the Hawks] will have any right to obtain or compel a disbursement of the Loan's reserves of proceeds." [Doc. 37-3 at ¶ 13(E)].

the Loan's reserves of proceeds." [Doc. 37-3 at ¶ 13(E)]. Put another way, while Axis could receive funds directly from FUSB, it had no right to demand them under the Construction Loan Agreement. [*See id.* at ¶¶ 11(B), 13(E)]. This, coupled with the contract's unambiguous statement that FUSB and the Hawks did "not intend to create any third-party beneficiary rights[,]" clearly establishes that FUSB and the Hawks did not intend for Axis to be able to enforce the Construction Loan Agreement. [*See id.* at ¶ 13(E)]; *Mills*, 470 So. 2d at 1229; *Owner-Operator Indep. Drivers Ass'n*, 59 S.W.3d at 70. Consequently, while there may be times when a third-party rights disclaimer cannot defeat a third-party claim, this is not such a case. The Construction Loan Agreement is clear; Axis is not a third-party beneficiary of the contract. Accordingly, Plaintiffs' breach claim against FUSB must be dismissed. *See Mills*, 470 So. 2d at 1229; *Owner-Operator Indep. Drivers Ass'n*, 59 S.W.3d at 70.

## IV. CONCLUSION

For the foregoing reasons, FUSB's Motion to Dismiss [Doc. 36] is **GRANTED**. As this decision resolves all outstanding claims in this matter, the Court will enter a separate judgment. As a result, Plaintiffs can now appeal the entirety of this case to the Sixth Circuit if they so desire. Therefore, Plaintiffs' Motion for Interlocutory Appeal [Doc. 84] is **DENIED AS MOOT**. There being no more matters to resolve, the Clerk is **DIRECTED** to close the file.

SO ORDERED.

*/s/ Charles E. Atchley, Jr.*
**CHARLES E. ATCHLEY, JR.**
**UNITED STATES DISTRICT JUDGE**